ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| OMAYRA COSS IRIZARRY<br><br>Recurrida<br><br>v.<br><br>RAFAEL PÉREZ RAMOS<br><br>Peticionario | TA2026CE00289 | *Certiorari,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.:<br>HSCI201301213<br><br>Sobre: División de Bienes Gananciales |

Panel integrado por su presidente el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de marzo de 2026.

Comparece Rafael Pérez Ramos ("señor Pérez Ramos" o "Peticionario") y nos solicita que revisemos una *Orden* emitida el 2 de febrero de 2026, notificada el 6 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Humacao ("TPI"). En virtud del referido dictamen, el TPI, entre otras, denegó la solicitud instada por el peticionario, a los efectos de celebrar una vista para evidenciar si se le adeudaba un crédito por concepto del pago de gastos relacionados a un inmueble ganancial, posterior a la sentencia sobre división de bienes gananciales.

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* y se *revoca* la determinación recurrida.

**I.**

El 16 de octubre de 2013, Omayra Coss Irizarry ("señor Coss Irizarry" o "Recurrida) presentó una *Demanda* sobre división de bienes gananciales en contra de su excónyuge, el señor Pérez Ramos. Tras varias instancias procesales, el 18 de septiembre de 2023, el foro de instancia dictaminó una *Sentencia Enmendada*. Atinente a la controversia ante nos, determinó que, hasta el momento, las partes adeudaban, en partes iguales, la suma de $126,315.15, correspondiente a una hipoteca suscrita sobre la residencia ganancial. Asimismo, reconoció a favor del peticionario un crédito por la cantidad de

$23,283.36, por concepto de pagos relacionados al préstamo y el mantenimiento de la propiedad efectuados desde marzo de 2018.

Posteriormente, el 12 de agosto de 2025, el señor Pérez Ramos instó una *Urgente Moción Solicitando Adjudicación Exclusiva y/o Orden Judicial para Asumir y/o Modificar Hipoteca sin Necesidad de Firma de Copropietario*. Indicó que, desde la fecha de la sentencia, había continuado realizando, de manera exclusiva, los pagos correspondientes al préstamo hipotecario, incluyendo pagos por concepto de la moratoria otorgada durante la pandemia del Covid-19. Adujo que, para salvaguardar la propiedad, debía llevar a cabo un proceso de modificación o reestructuración del préstamo. Sostuvo que, para ello, se requería la firma de la señora Coss Irizarry, debido a que aún figuraba como cotitular. No obstante, alegó que la recurrida se había negado a suscribir los documentos necesarios. Por tanto, peticionó que el inmueble fuera adjudicado a su favor y que se le autorizara a asumir el préstamo hipotecario en su totalidad. En la alternativa, solicitó que se le ordenara a la señora Coss Irizarry a firmar los documentos requeridos para modificar, refinanciar o formalizar los pagos de la hipoteca.

El 14 de agosto de 2025, notificada el 25 de agosto de 2025, el TPI le ordenó al señor Pérez Ramos a evidenciar que la señora Coss Irizarry se había negado a suscribir los documentos ante la institución financiera, según alegado.

El 19 de agosto de 2025, la recurrida radicó una *Moción Solicitando Ejecución de Sentencia y en Oposición a "Urgente Moción Solicitando Adjudicación Exclusiva y/o Orden Judicial para Asumir y/o Modificar Hipoteca sin Necesidad de Firma de Copropietario"*. Expuso que no deseaba permanecer en indivisión y, como consecuencia, solicitó la ejecución de la sentencia. Suplicó, además, que se le concediera al señor Pérez Ramos un término para refinanciar la propiedad a su nombre y eliminar el nombre de la señora Coss Irizarry del préstamo hipotecario. Razonó que, en caso de que el peticionario no contara con la capacidad económica para refinanciar la propiedad, procedía su venta en pública subasta.

Consecuentemente, el 21 de agosto de 2025, el peticionario radicó una *Urgente Moción Reiterando Solicitud de Órdenes y Solicitud de Vista*. Indicó que, como parte de los programas de moratoria concedidos durante la pandemia del Covid-19, solicitó la suspensión de seis (6) pagos del préstamo hipotecario. Explicó que dichos pagos debían ser pagados en un solo pago residual al final del préstamo. Sin embargo, manifestó que el banco no aceptará los pagos, hasta tanto no se complete un proceso de modificación, el cual requiere la firma de la señora Coss Irizarry. Reiteró que la recurrida se negó a firmar los documentos requeridos por la institución financiera. Por otra parte, arguyó que, desde enero de 2023 había realizado todos los pagos del préstamo hipotecario y del mantenimiento del inmueble ganancial, razón por la cual ostentaba un crédito ascendente a $19,244.00. Siendo así, solicitó que se emitiera una orden bajo apercibimiento de desacato, con la intención de que la recurrida llevara a cabo el trámite correspondiente ante el banco para realizar el refinanciamiento y la cesión del inmueble. A su vez, suplicó que se celebrara una vista de carácter urgente, sin especificar el motivo de la misma.

El 12 de septiembre de 2025, el señor Pérez Ramos radicó una *Oposición a "Moción Solicitando Ejecución de Sentencia y en Oposición", Cumplimiento de Orden y Reiterando Solicitud de Órdenes y Solicitud de Vista*. Asimismo, el 6 de octubre de 2025, el peticionario presentó una *Moción Informativa y Solicitud de Orden*. Reiteró su solicitud en cuanto a que se dictara una orden sobre apercibimiento de desacato dirigida hacia la señora Coss Irizarry, para que cooperara con el trámite ante el banco. Así, pues, el 8 de octubre de 2025, el TPI emitió una *Orden* en virtud de la cual le ordenó a la recurrida a responder a lo solicitado por el peticionario.

El 17 de octubre de 2025, la señora Coss Irizarry instó una *Moción en Cumplimiento de Orden del 8 de octubre de 2025*. En síntesis, sostuvo que, a través del proceso llevado a cabo ante la institución financiera, el señor Pérez Ramos intentaba obtener una segunda hipoteca sobre la propiedad en controversia.

Como corolario, el 22 de octubre de 2025, notificada el 28 de octubre de 2025, el TPI emitió una *Orden* en la cual le solicitó al peticionario que explicara si lo que interesaba firmar ante la institución financiera constituía una segunda hipoteca. Dispuso que, de ser así, denegaría las solicitudes instadas por el señor Pérez Ramos.

El 27 de octubre de 2025, el peticionario notificó una *Oposición a "Moción en Cumplimiento de Orden del 8 de octubre de 2025"*. Asimismo, el 4 de noviembre de 2025, el señor Pérez Ramos presentó una *Urgentísima Moción Reiterando Oposición a "Moción en Cumplimiento de Orden del 8 de octubre de 2025" y en Cumplimiento de Orden*. Aclaró que, como alternativa para colocar los pagos del préstamo hipotecario al día, la institución financiera ofreció un *Partial Claim*. Explicó que dicho procedimiento permitía retribuir los pagos vencidos en un único pago residual al finalizar el préstamo. Indicó que, para ello, era necesario suscribir un nuevo pagaré hipotecario, a los fines de restructurar los términos de vencimiento de los pagos adeudados. En caso de no poder recurrir al *Partial Claim*, reclamó el crédito en exceso de su participación, con el fin de utilizar el dinero para colocar los pagos al día. No obstante, esbozó que sería necesario concederle el tiempo necesario y requerido por el banco para completar el proceso de refinanciamiento. Añadió que el foro de instancia tendría que, a su vez, ordenarle a la señora Coss Irizarry a otorgar la escritura de cesión correspondiente.

El 30 de octubre de 2025, notificada el 5 de noviembre de 2025, el foro de instancia emitió una *Orden* en virtud de la cual denegó lo solicitado por el peticionario en la *Oposición a "Moción en Cumplimiento de Orden del 8 de octubre de 2025"*. Siendo así, el 12 de noviembre de 2025, el señor Pérez Ramos instó una *Moción en Reconsideración y en Solicitud de Determinaciones Iniciales de Hecho y Derecho y Solicitud de Aclaración de Orden Emitida*. Señaló que mediante la solicitud presentada el 27 de octubre de 2025, realizó las siguientes solicitudes:

   a.  le ordene a la Demandada a comparecer al Banco Popular a completar la solicitud de *Partial Claim*;

    b. se le permita al demandado completar el proceso de refinanciamiento de la propiedad;

    c. se evite que se venda la propiedad en pública subasta sobre todo en protección de la menor hija de las partes; o

    d. en la alternativa se le permita colocar al día los pagos de hipoteca sin tener que recurrir al *Partial Claim* pero se le conceda el tiempo necesario y requerido por la institución bancaria para completar el proceso de refinanciamiento; y

    e. que en su día se le ordene a la demandada otorgar la correspondiente escritura d cesión a favor del demandado.[1]

Por tanto, peticionó que se aclarara las solicitudes que fueron denegadas a través de la *Orden* dictada el 30 de octubre de 2025 y notificada el 5 de noviembre de 2025.

Además, el 13 de noviembre de 2025, notificada el día siguiente, el TPI emitió una *Orden* mediante la cual atendió la *Urgentísima Moción Reiterando Oposición a "Moción en Cumplimiento de Orden del 8 de octubre de 2025" y en Cumplimiento de Orden*. En virtud de la misma, dispuso lo siguiente: "[v]éase Orden dada el 30 de octubre de 2025". Respecto a la *Moción en Reconsideración y en Solicitud de Determinaciones Iniciales de Hecho y Derecho y Solicitud de Aclaración de Orden Emitida*, el 24 de noviembre de 2025, notificada el 2 de diciembre de 2025, el foro de instancia dictó otra *Orden* mediante la cual le concedió un término a la recurrida para replicar la moción.

El 17 de diciembre de 2025, la señora Coss Irizarry radicó una *Moción en Cumplimiento de Orden del 24 de noviembre de 2025*. Insistió que, ante la existencia de una sentencia final y firme, el único asunto pendiente ante el TPI era la ejecución de la sentencia. En atención a ello, solicitó que se procediera con la ejecución correspondiente y que se le concediera un término perentorio al señor Pérez Ramos para refinanciar la propiedad a su nombre, de manera tal que se eliminara el nombre de la señora Coss Irizarry del préstamo hipotecario. Como alternativa, en caso de que el peticionario no contara con la capacidad económica para refinanciar el inmueble, peticionó que se vendiera en pública subasta y se adjudicaran los créditos según la *Sentencia Enmendada*.

El 12 de enero de 2025, notificada el día siguiente, el TPI le ordenó al señor Pérez Ramos a expresarse en cuanto a la *Moción en Cumplimiento de Orden del*

---

[1] Véase, Apéndice del recurso, Entrada Núm. 33, pág. 2.

*24 de noviembre de 2025.* Así las cosas, el 28 de enero de 2026, el peticionario notificó su *Moción en Cumplimiento de Orden.* Adujo que procedía la celebración de una vista, a los efectos de presentar evidencia en cuanto a los créditos que tiene derecho por concepto de los pagos de hipoteca y mantenimiento que había realizado desde que se emitió la *Sentencia Enmendada.* Razonó que, de proceder con la ejecución de sentencia, sin adjudicar su reclamación, resultaría en un enriquecimiento injusto.

Aquilatados los argumentos, el 2 de febrero de 2026, notificada el 6 de febrero de 2026, el TPI emitió una *Orden* en la cual dispuso lo siguiente:

> No ha lugar a lo solicitado por la parte demandada. Véase Orden notificada el 5 de noviembre de 2025.

> Se concede a la parte demandada un término de 90 días para cambiar todo el procedimiento de refinanciamiento de la propiedad.

> Pasado dicho término sin haber cumplido con lo ordenado se autoriza la venta del inmueble en pública subasta.[2]

Insatisfecho, el 9 de marzo de 2026, el señor Pérez Ramos acudió ante nos mediante *Petición de Certiorari* en la cual realizó los siguientes señalamientos de error:

> **Erró en derecho el TPI y abusó de su discreción al resolver No ha Lugar a las solicitudes del demandado en cuanto a su derecho de compensación por los pagos realizados por este en exceso de su participación por concepto de préstamo hipotecario, mejoras y mantenimiento de la propiedad. Por lo cual, actuó en violación al derecho a compensación y contrario a lo resuelto en Díaz Rodríguez v. García Neris, 208 D.P.R. 706 (2022) y Montalván Ruiz v. Rodríguez Navarro, 161 D.P.R. 411 (2004), induciendo un evidente enriquecimiento injusto en menoscabo del patrimonio del peticionario.**

> **Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar a la solicitud de celebración de una vista evidenciaria, cuando de las alegaciones surge claramente la existencia de una reclamación sobre compensación por los pagos realizados por el peticionario en concepto de préstamo hipotecario, mejoras y mantenimiento de la propiedad.**

> **Erró el TPI en no proceder con la aclaración de la Orden emitida en cuanto a cuál de las solicitudes realizadas por el demandado-peticionario fue dirigida, a fin de evitar interpretaciones conflictivas o dificultades en su ejecución.**

El 10 de marzo de 2026, este Tribunal emitió una *Resolución* en virtud de la cual le concedimos diez (10) días a la señora Coss Irizarry para presentar su

---

[2] Véase, Apéndice del recurso, Entrada Núm. 41.

alegato en oposición. Transcurrido el término otorgado, sin la comparecencia de la parte recurrida, damos por perfeccionado el recurso y procedemos a resolver.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch*

*v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello,* 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

La sociedad legal de gananciales queda extinta, una vez disuelto el vínculo matrimonial. Art. 1315 del Código Civil de 1930, 31 LPRA sec. 3681[3]. No obstante, la liquidación del capital común entre los ex cónyuges no siempre ocurre simultáneamente con la disolución del matrimonio. *Montalván v. Rodríguez,* 161 DPR 411, 416 (2004). En estas instancias, surge una comunidad de bienes postganancial, compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente y alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. *Íd.,* pág. 421. Dicha comunidad de bienes postganancial perdura hasta que cualquiera de los excónyuges solicite la división de la cosa común. Véase: Arts. 334 y 1865 del Código Civil de 1930, 31 LPRA secs. 1279 y 5295.

Como norma general, la división de los bienes habidos en la comunidad postganancial se hará por partes iguales entre los excónyuges. Art. 1322 de Código Civil de 1930, 31 LPRA sec. 3696. En otras palabras, la participación de los excónyuges en la comunidad postganancial será por partes iguales, tanto en los beneficios como en las cargas, mientras no se pruebe lo contrario. Art. 327 del Código Civil de 1930, 31 LPRA sec. 1272.

---

[3] Se hace referencia al Código Civil de 1930, por ser el vigente al momento del matrimonio y su posterior disolución.

Sin embargo, **al momento de decretar la liquidación de la sociedad de gananciales, el tribunal debe tomar en consideración la procedencia de cualquier acción de reembolso que reclamen los excónyuges.** (Énfasis suplido). *Figueroa Robledo v. Rivera Rosa,* 149 DPR 565 (1999). **Así, pues, en la adjudicación final de la participación que le corresponde a cada ex cónyuge, de acuerdo a la evidencia sometida, debe tomarse en consideración si uno de los ex cónyuges puede interponer frente al otro un crédito por los cambios y operaciones ocurridas en el haber común.** (Énfasis suplido). *Montalván v. Rodríguez, supra,* pág. 423.

### III.

En el recurso que nos ocupa, el peticionario nos solicita que revisemos la determinación mediante la cual, entre otras, el foro de instancia denegó su solicitud para celebrar una vista, a los fines de evidenciar que se le adeuda un crédito por concepto de haber continuado realizando los pagos relacionados al inmueble ganancial. Arguye que, al negarse a considerar su reclamación, el TPI ignoró la normativa que reconoce el derecho de los comuneros a reclamar compensación por aportaciones realizadas al patrimonio común. Sostiene, además, que impedir tal adjudicación constituiría un enriquecimiento injusto. Le asiste la razón. Veamos.

Por entender que los señalamientos de error están intrínsicamente relacionados, serán discutidos de manera conjunta. Conforme surge del expediente, la *Sentencia Enmendada* fue emitida el 18 de septiembre de 2023. En virtud de la misma, el TPI adjudicó a favor del señor Pérez Ramos un crédito de $23,283.36, por concepto de los pagos relacionados a la hipoteca y el mantenimiento de la propiedad, calculados a partir de marzo de 2018. No obstante, el peticionario reclama que, hasta el momento, ha continuado realizando los aludidos pagos, ya que la comunidad postganancial aún no ha sido liquidada. Como consecuencia, razona que, previo a ejecutar la sentencia, el crédito debe ser calculado nuevamente.

De ser cierto que el señor Pérez Ramos se ha encargado, exclusivamente, de cubrir los gastos relacionados al inmueble ganancial, se le adeuda un crédito

por concepto de ello. Ante esta situación, es necesario celebrar una vista evidenciaria para establecer, con base a la prueba presentada, si el peticionario tiene derecho a los créditos reclamados. Por tanto, resulta forzoso concluir que el foro de instancia incidió al disponer de lo peticionado, previo a la celebración de la vista evidenciaria correspondiente. Como resultado, somos del criterio que los errores primero y segundo fueron cometidos.

Finalmente, el peticionario sostiene que el TPI erró al no emitir un pronunciamiento en el cual aclarara lo dispuesto en la *Orden* del 5 de noviembre de 2025. No obstante, examinada la aludida determinación, constatamos que se desprende con meridiana claridad que mediante la misma el foro de instancia denegó la totalidad de lo solicitado por el señor Pérez Ramos. En atención a ello, no resultaba necesario que el TPI esclareciera la disposición emitida. Siendo así, el tercer error no fue cometido.

## IV.

Por los fundamentos que anteceden, los cuales hacemos constar en esta *Sentencia*, se *expide* el auto de *certiorari* solicitado y se *revoca* la determinación recurrida. Se devuelve al Tribunal de Primera Instancia, Sala Superior de Humacao, para la celebración de una Vista Evidenciaria, conforme a lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones